**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

VALERIE KLINE,                                    )
                                                  )
   *Plaintiff*,                    )
                                                  )
v.                                                )  Case No. 1:16-cv-262-RCL
                                                  )
MARGARET WEICHERT, *in her*                       )
*official capacity as Acting Director of*         )
*U.S. Office of Personnel Management*,            )
                                                  )
   *Defendant*.                     )
_____)

## <u>MEMORANDUM OPINION</u>

  On February 16, 2016, plaintiff Valerie Kline filed this lawsuit against defendant Margaret Weichert in her official capacity as Acting Director of U.S. Office of Personnel Management.[1] Ms. Kline alleges sex discrimination, age discrimination, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e *et seq.*, 42 USCS § 1981 and under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634. On April 11, 2019, defendant moved for summary judgment under Federal Rule of Civil Procedure 56. Upon consideration of that motion (ECF No. 34), Ms. Kline's opposition (ECF No. 35), defendant's reply (ECF No. 38), and Ms. Kline's sur-reply (ECF No. 39), the Court will **GRANT** defendant's motion.

---

[1] Ms. Kline's Complaint initially named Beth Cobert, who was the Acting Director of U.S. Office of Personnel Management at the time.

# BACKGROUND[2]

Ms. Kline is a female over the age of 40 who has been employed by the Office of Personnel Management ("OPM") since 2002. ECF No. 35-2, Exh. 5. Ms. Kline's first-line supervisor, William Davis, retired in May of 2007 and was superseded by Donna Lease in June of 2007. ECF No. 34 at 2; ECF No. 1 at ¶ 26. In December of 2007, a detail assignment for 120 days from the Publications Management Group ("PMG") to the Contracting Group was proposed for Ms. Kline and approved by Claudio Benedi and Tina McGuire. ECF No. 34-1, Exh. 1. On January 2, 2008, Ms. Kline received an email from Patricia Jones indicating that she had a package to pick up. *Id.* at Exh. 2. This package contained paperwork concerning Ms. Kline's proposed detail to the Contracting Group. *Id.* at Exh. 3.

On January 3, 2008, upon learning that Ms. Kline had the original detail paperwork, Ms. Lease asked her for the paperwork, and a disagreement ensued. *Id.* at Exh. 4. The parties dispute who started that disagreement and the basis for it. Ms. Lease discussed the incident with Mr. Benedi and Caprice Miller, a Human Resources Specialist in the agency's office of Employee Relations. *Id.* at Exh. 7. On January 20, 2008, Ms. Kline received a Counseling Memorandum from Ms. Lease concerning Ms. Kline's unacceptable behavior towards her supervisor. *Id.* at Exh. 9. On March 4, 2008, Ms. Kline filed an EEO complaint relating to the issuance of the Counseling Memorandum. *Id.* at Exh. 11. Ms. Lease became aware of Ms. Kline's prior EEO activity in July or August of 2007. *Id.* at Exh. 4.

---

[2] Because only defendant has filed for summary judgment, only defendant was required to submit a statement of material facts. Ms. Kline has suggested using her proposed stipulated facts (ECF No. 35-2 at 13-15) in lieu of defendant's statement of material facts due to an alleged discovery dispute, but the Court finds that defendant complied with all discovery requirements, and thus there is no basis for ignoring defendant's statement of material facts or for finding that defendant is bound by Ms. Kline's proposed stipulated facts. Of course, the Court has still noted the parties' factual disagreements throughout the Background Section of this Memorandum Opinion.

On June 18, 2008, Ms. Lease assigned Ms. Kline to prepare the Contracting Group Customer Service Guide for submission to OPM's web team for posting onto OPM's intranet site. *Id.* at Exh. 12. On July 24, 2008, Ms. Kline sent Ms. Lease an email stating that two of her co-workers—Lisa Adgerson and Wayne Cuffley—might be interested in Section 508 compliance training. *Id.* Ms. Lease responded that Ms. Kline needed to continue working on her assigned project and instructed her to "see me before discussing any potential changes to assignments, projects, etc. with your co-workers." *Id.* at Exh. 13-14. After receiving this email, Ms. Kline attended a staff meeting at which she stated that she was "coordinating the [Section 508] training, which was free, in case anyone was interested." ECF No. 35-2, Exh. 5. On August 8, 2008, Ms. Lease issued Ms. Kline an official reprimand for failure to follow instructions. ECF No. 34-1, Exh. 12. Ms. Kline disputes whether this reprimand was warranted, maintaining that she did not violate any policies or instructions by making that announcement. ECF No. 35-2 at 15.

On November 25, 2008, OPM advertised that a GS-13 Management Analyst position was under vacancy. *Id.* at Exh. 8. Ms. Kline had believed that she would be assuming this position once the previous employee in that position, Jacqueline Carter, retired. ECF No. 35-2, Exh. 5. Ms. Kline and Stephen Hickman were the only two applicants. ECF No. 34-1, Exhs. 16-17. Between September 2008 and January 2009, Ms. Kline and Mr. Hickman had the same job title as Management Analyst but were under two different position descriptions. ECF No. 34-1, Exh. 18. According to defendant, Mr. Hickman's position was a full-time regulatory position on the Regulatory Team of the PMG, and his responsibilities included managing the Regulatory Issuance System ("RIS"), analyzing legislation, processing documents to upload to the system, and serving as the Liaison between the office and the Federal Register. *Id.* at Exhs. 10, 18. Ms.

3

Kline maintains that Mr. Hickman's position description did not contain any mention of responsibility for managing the RIS, and thus he was performing that work unlawfully. ECF No. 35-1 at 4. Both parties agree that Ms. Kline was responsible for analyzing and preparing recommendations to assist offices in achieving their multi-media communication objectives as well as for maintaining and issuing the OPM Directory of Key Officials; however, Ms. Kline disagrees with defendant's contention that she merely assisted the Regulatory Team as needed and maintains that she performed regulatory work as the "backup" to the RIS manager and served as the Federal Register and OMB Liaisons. ECF No. 34-1, Exhs. 18-19; ECF No. 35-1 at 4, 6. Ms. Kline also alleges that on September 8, 2008, Ms. Lease had given her responsibility for reviewing and processing Federal Register notices, and it was not until January 23, 2009 that Ms. Lease informed her that she would only be reviewing routine notices from that point forward, and after July 30, 2009, Ms. Kline was no longer assigned any regulatory work. ECF No. 35 at 18-19; ECF No. 1, ¶¶ 28, 30, 34.

According to defendant, Mr. Hickman and Ms. Kline were both certified as qualified for the Management Analyst, GS-0434-13 position. ECF No. 34-1, Exh. 21. Ms. Kline agrees that Ms. Kline and Mr. Hickman were both qualified for the GS-13 position at the time the position was advertised, but Ms. Kline believes that Mr. Hickman was not qualified for the position at the time Ms. Carter retired, which was two years earlier. ECF No. 35-1 at 4. When the position first became vacant two years earlier, Ms. Kline had been at the GS-12 level for over five years, while Mr. Kline had only been at the GS-12 level for three weeks. ECF No. 35 at 10-11. OPM regulations require a minimum of one year time-in-grade (or other qualifying factors) to be eligible for the next higher grade. *Id.* Mr. Hickman was selected for the position effective

December 21, 2008. ECF No. 34 at 5; ECF No. 1 ¶ 22. His major responsibilities in this new position included managing the RIS. ECF No. 34-1, Exh. 20.

On March 5, 2009, Ms. Lease sent an email to PMG staff instructing them to store their work and personal items off their desks because of sprinkler system work to be performed by night contractors. ECF No. 34 at 6; ECF No. 1 ¶ 60. Ms. Kline replied-all to this email, "Bob you better order us some boxes!!!." ECF No. 34-1, Exh. 23. On March 31, 2009, Ms. Lease issued a Proposal to Suspend Ms. Kline, which defendant claims was due to her failure to follow instructions in connection with the March 5, 2009 email. ECF No. 34-1, Exh. 28. On May 27, 2009, Ms. McGuire issued a Decision on Proposed Suspension, finding that the charges outlined in the Proposal to Suspend warranted Ms. Kline's suspension with pay on Saturday, May 30, 2009. *Id.* at Exh. 24. Ms. Kline contends that she had authority to request the purchase of boxes, that there was no requirement that she ask permission before making such a request, and that her email did not violate any prior instructions from her supervisors. ECF No. 35-1 at 10; ECF No. 35-2 at 15.

Ms. Kline filed four administrative EEO complaints pertaining to the issues relevant to this litigation, all of which were consolidated: OPM Case Nos. 2008019 (filed on March 4, 2008), 2008034 (filed on September 18, 2008), 2009014 (filed on February 20, 2009), and 2009026 (filed on July 14, 2009). On September 7, 2012, the EEOC Administrative Judge issued an Order Entering Judgment and Decision granting the agency's motion for summary judgment and entering judgment in favor of the agency on all claims, which became the agency's final decision. ECF No. 34-1, Exh. 25. Ms. Kline filed an appeal, and on April 17, 2015, the Office of Federal Operations affirmed the Administrative Judge's decision. *Id.* at Exh. 26. Ms. Kline

requested reconsideration, which was denied on November 12, 2015. *Id.* at Exh. 27. On February 16, 2016, Ms. Kline filed this lawsuit. ECF No. 1.

## LEGAL STANDARDS

## I. SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Athridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 629 (D.C. Cir. 2010). To show that a dispute is "genuine" and defeat a summary judgment motion, the nonmoving party must present evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50. A mere "scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. If, however, there are material, "genuine issues that properly can be resolved only by a finder of fact," summary judgment is not appropriate. *Id.* at 250. When deciding a summary judgment motion, the Court is not supposed to weigh the evidence—rather, the Court must determine whether there is contradictory evidence to be weighed at trial. *See Abraham v. Graphic Arts Int'l Union*, 660 F.2d 811, 814 (D.C. Cir. 1981).

## II. DISCRIMINATION & RETALIATION CLAIMS

Ms. Kline alleges sex discrimination, age discrimination, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C § 2000e *et seq.*, 42 USCS § 1981 and under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634. Employment discrimination and retaliation claims that rely on circumstantial evidence—as opposed to direct evidence of discrimination—are analyzed under the burden-shifting framework found in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Ford v. Mabus*, 629 F.3d 198, 200 (D.C. Cir. 2010) (applying the *McDonnell Douglas* burden-shifting framework to an ADEA claim). Under *McDonnell Douglas*, the employee "must carry the initial burden under the statute of establishing a prima facie case of . . . discrimination." *Id.* at 802. Under both Title VII and the ADEA, a *prima facie* case requires a showing that "(1) [the plaintiff] is a member of a protected class; (2) [the plaintiff] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Chappell-Johnson v. Powell*, 440 F.3d 484, 488 (D.C. Cir. 2006) (citing *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999)).

If the employee establishes a *prima facie* case of discrimination, the burden "must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse action. *McDonnell Douglas*, 411 U.S. at 802. The employer "must clearly set forth, through the introduction of admissible evidence, the reasons for the [adverse action]" so as to "raise[] a genuine issue of fact as to whether it discriminated against the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981). The employer, however, "need not persuade the court that it was actually motivated by the proffered reasons." *Id.* at 254.

If the employer succeeds in offering legitimate, nondiscriminatory reasons for the action, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for

discrimination." *Id.* at 253. As the Supreme Court recently held in *Babb v. Wilkie*, 140 S. Ct. 1168 (2020), lawsuits brought under the ADEA only require the plaintiff to show that age discrimination was a but-for cause of the *differential treatment*; the plaintiff does not necessarily need to show that age discrimination was a but-for cause of the *personnel decision* itself. The plaintiff may demonstrate pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. 248 at 256. Either way, the plaintiff must show "*both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). Evidence of pretext may include "the employer's better treatment of similarly situated employees outside the plaintiff's protected group, its inconsistent or dishonest explanations, its deviation from established procedures or criteria, or the employer's pattern of poor treatment of other employees in the same protected group as the plaintiff" as well as any "other relevant evidence that a jury could *reasonably* conclude evinces an illicit motive." *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015) (emphasis added).

Retaliation claims are subject to the same *McDonnell Douglas* burden shifting standard as discrimination claims. *Walker*, 798 F.3d at 1091. To establish a *prima facie* case of retaliation, "the plaintiff must allege that she engaged in activity protected by [the statute], the employer took adverse action against her, and the employer took that action because of the employee's protected conduct." *Id.* at 1091-92. Once the plaintiff establishes these three elements of a *prima facie* case, "the burden shifts to the employer to identify the legitimate, . . . non-retaliatory reason on which it relied in taking the complained-of action." *Walker*, 798 F.3d at 1092. Then, the plaintiff must show "that the employer's stated reasons were pretextual, and the real reason[]"

for the adverse action was "prohibited . . . retaliation." *Id.* The aforementioned categories of evidence demonstrating pretext in discrimination claims also apply to retaliation claims.

In practicality, the issue of whether the plaintiff has established a *prima facie* case of discrimination or retaliation under *McDonnell Douglas* is often irrelevant. *See Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008). "[B]y the time the district court considers an employer's motion for summary judgment . . . the employer ordinarily will have asserted a legitimate, non-discriminatory reason for the challenged decision," which is "important because once the employer asserts a legitimate, non-discriminatory reason, the question [of] whether the employee actually made out a prima facie case is 'no longer relevant' and thus 'disappear[s]' and 'drops out of the picture.'" *Id.* (quoting *Hicks*, 509 U.S. at 510-11). Therefore, the D.C. Circuit has stated:

> [W]here an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not, and should not, decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*. Rather, in considering an employer's motion for summary judgment or judgment as a matter of law in those circumstances, the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of [an impermissible ground]?

*Id.* at 494; *see Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009) (explaining that the simplified *McDonnell Douglas* standard applies to retaliation claims as well as discrimination claims).

## III. HOSTILE WORK ENVIRONMENT CLAIMS

Title VII also prohibits creating a hostile work environment, considering it to be a form of discrimination. "When the workplace is permeated with 'discriminatory intimidation, ridicule,

and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)). Courts are to look "to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance" to determine whether a hostile work environment exists. *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)). The standard for such a claim is extremely high, and as the D.C. Circuit has explained, "a few isolated incidents of offensive conduct do not amount to actionable harassment." *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002).

## ANALYSIS

For the reasons set forth below, the Court will grant defendant's motion in its entirety and dismiss the case with prejudice.

## I. THE COURT WILL GRANT SUMMARY JUDGMENT FOR THE DEFENSE ON COUNT ONE.

Defendant is entitled to summary judgment on Count I, which alleges that Ms. Kline was not selected for the GS-13 position due to age and sex discrimination.[3] Defendant argues that

---

[3] In her opposition and sur-reply, Ms. Kline argues numerous times that her non-selection was also based on retaliation, but her Complaint does not allege that non-selection was based on retaliation (only discrimination). Count I—the only Count that mentions non-selection—is specifically titled "Count I – Non-Selection Discrimination" and never mentions retaliation. Counts II and III (titled "Count II – Diminished Duties Retaliation" and "Count III – Retaliation") make no mention of her non-selection, stating instead that retaliation was based on the other alleged adverse actions specified in those Counts. *See* ECF No. 1 at 10-14. In fact, nowhere in the Complaint (even outside of the section listing the three Counts) does Ms. Kline reference retaliation specifically in connection with non-selection. *See generally* ECF No. 1. Therefore, Ms. Kline has not actually brought a claim for retaliation based on non-selection for the GS-13 position. Although the summary judgment standard requires the Court to draw all reasonable inferences in Ms. Kline's favor, it does not permit her to make arguments about a Count that does not

there was a legitimate, non-discriminatory reason for deciding not to hire Ms. Kline for the position. Specifically, defendant states that Mr. Hickman had more experience with the Federal Register and was highly recommended by his previous supervisor at the Federal Register. Because he had worked for the Federal Register for five years prior to joining OPM, he had the proficiency and skills that would be important to the Management position. Additionally, Mr. Hickman's previous position at OPM put him in charge of managing the RIS, which was important for the open position.

Once the defendant puts forth a legitimate, non-discriminatory reason for an adverse action, it is the plaintiff's responsibility to show that the stated rationale for the adverse action is mere pretext. Ms. Kline alleges that her position involved significantly more responsibility for the RIS and regulatory work than defendant admits. Even assuming for the purposes of summary judgment that a jury believes Ms. Kline and finds that she did do more than just assist the Regulatory Team, she still cannot show that defendant's decision was based (even in part) on her sex or her age. All she can prove is that the person ultimately selected was a male in his twenties. Although comparator evidence is one way to help prove a discrimination claim, Ms. Kline's allegations (even if believed) are insufficient to prove that defendant chose Mr. Hickman over Ms. Kline based on sex or age. In defendant's opinion, Mr. Hickman was more qualified than Ms. Kline, and the Court is not authorized to "become 'a super-personnel department that

---

exist. Federal Rule of Civil Procedure 8(e) states that pleadings "must be construed so as to do justice." Because this case has already progressed to the summary judgment stage and discovery is already closed, it would be extremely unjust for this Court to infer the existence of a retaliation claim that was never alleged—Ms. Kline could have alleged this claim in her initial Complaint or in an Amended Complaint, but she did not. *See Dickerson v. SecTek, Inc.*, 238 F. Supp. 2d 66, 85-86 (D.D.C. 2002) ("[I]n opposing defendants' motion for summary judgment, plaintiffs have sought to broaden [their discrimination] claim, asserting that . . . [plaintiff] engaged in unlawful retaliation[.] An opposition to a summary judgment motion is not the place for a plaintiff to raise new claims. Plaintiffs had the opportunity to make a retaliation claim in their initial complaint [but] chose not to do so. Accordingly, the Court will not consider that claim at this stage."). This case has progressed too far for Ms. Kline to start making arguments about a claim that she did not properly plead.

reexamines an entity's business decisions.'" *Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C.

Cir. 1999) (quoting *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986)); *see also*

*Adeyemi v. District of Columbia*, 525 F.3d 1222, 1227 (D.C. Cir 2008) (explaining that a

plaintiff can only challenge an employer's "qualifications-based explanation" for hiring someone

else "if the plaintiff was *significantly* better qualified for the job" than the person ultimately

chosen). Neither Title VII nor the ADEA permits the Court to "second guess an employer's

personnel decision absent [a] demonstrably discriminatory motive." *Fischbach v. D.C. Dep't of*

*Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996). No such "demonstrably discriminatory

motive" exists here. Additionally, even if the Court were to find that Ms. Kline was more

qualified than Mr. Hickman, all that matters is that her employer believed Mr. Hickman was

more qualified. Ms. Kline cannot show that defendant's belief was ingenuine, and therefore her

comparator evidence is insufficient.

      Ms. Kline argues that the GS-13 position should have been filled two years earlier when

it first became vacant—at which time Mr. Hickman would not have been qualified—and thus

defendant violated the Administrative Procedure Act ("APA"). Even assuming that defendant did

commit an administrative violation, Ms. Kline's Complaint does not assert an APA claim.

Therefore, in order for an APA violation to be relevant, Ms. Kline would have to show that the

delay was specifically engineered to deny her the position based on her age and/or sex. Ms. Kline

has not brought forth even a shred of evidence that this was the case, making the question of

whether defendant acted improperly by waiting two years to fill the position irrelevant. Ms.

Kline also argues that because Mr. Hickman's GS-12 position description did not include

responsibility for managing the RIS, giving him that responsibility was a violation of OPM

regulations. Again, such a violation is only relevant if Ms. Kline can establish that defendant

gave him this responsibility in order to prevent Ms. Kline from ultimately getting the GS-13 position based on her sex and age, which she cannot do. Therefore, even if Mr. Hickman's GS-12 responsibilities did constitute an APA violation, such a violation is not relevant to this case.[4]

Although the Court recognizes that there is rarely a "smoking gun" in age or sex discrimination cases, Ms. Kline still needs something more than what she has presented. For example, Ms. Kline has brought forth no evidence that anyone at work made negative comments about her age or sex, she cannot demonstrate that OPM has a pattern of hiring men over women or hiring younger employees over older employees, and discovery did not uncover any testimony or documentary evidence suggesting that defendant made the selection based on sex or age.[5] Discrimination claims typically rely on circumstantial evidence, but Ms. Kline has failed to present even that. Her argument is essentially, "I am female, and I am over 40. My employer selected a younger male over me for the GS-13 position. Therefore, my employer must have made this decision based on my sex and age." What is missing here is the link between the adverse action and her age and/or sex—without that link, no reasonable jury could find discrimination.

Ms. Kline argues that the link is Mr. Hickman's age and sex, but that alone is not enough. To hold otherwise would be to say that any time an employer hires a male applicant, the female applicant who was not hired does not need to present a single other piece of evidence in order to make out a successful Title VII claim. To hold otherwise would be to say that any time an

---

[4] Ms. Kline asks the Court to "disqualif[y]" Mr. Hickman's GS-12 responsibilities for managing the RIS. ECF No. 35 at 5. Again, whether OPM committed an administrative violation is not relevant if Ms. Kline cannot show that the violation was committed to facilitate discrimination. The Court's only responsibility here is to determine whether Ms. Kline can establish an ADEA or a Title VII violation, and "disqualifying" Mr. Hickman's GS-12 responsibilities (assuming that Ms. Kline uses "disqualifying" to mean "ignoring") would be improper.
[5] To be clear, the Court is not saying that Ms. Kline would necessarily need to show these precise facts in order to prevail on her discrimination claim; rather, these are merely some examples of the types of evidence that are usually helpful to a plaintiff in establishing a discrimination claim.

employer hires a younger applicant, the applicant over 40 who was not hired does not need to present a single other piece of evidence in order to make out a successful ADEA claim. Such a holding would not be in accordance with Title VII, the ADEA, or the summary judgment standard. Therefore, in determining that Ms. Kline's discrimination claim fails as a matter of law, the Court is not merely weighing the evidence. Rather, the Court has determined that there is no evidence to be weighed, as Ms. Kline has not alleged any actual evidence of sex or age discrimination sufficient to support her claim. Because no material facts relevant to her discrimination claims are in dispute, the Court will grant defendant's motion for summary judgment on Count I.

## II. THE COURT WILL GRANT SUMMARY JUDGMENT FOR THE DEFENSE ON COUNT TWO.

Defendant is entitled to summary judgment on Count II, which alleges that defendant diminished Ms. Kline's duties in retaliation for her prior EEO activity. Specifically, Ms. Kline alleges that OPM diminished her responsibility for reviewing all Federal Register notices to only "routine" notices, followed by the elimination of all her regulatory duties. Defendant argues that being assigned only to routine Federal Register notices or being removed from regulatory work altogether is not an adverse action, and thus Ms. Kline cannot show retaliation. The Court agrees with this argument.

Although the simplified *McDonnell Douglas* burden-shifting framework usually means that Courts do not analyze whether the plaintiff has established a *prima facie* case, this is not entirely true when the employer disputes whether the complained-of action constitutes an adverse action or when there is clearly no adverse action at all. *See Nurriddin v. Bolden*, 40 F. Supp. 3d 104, 119 (D.D.C. 2014), *aff'd*, 818 F.3d 751 (D.C. Cir. 2016); *Webster v. DOE*, 2020

14

U.S. Dist. LEXIS 41543, at *13 (D.D.C. March 10, 2020) (citing *Nurriddin*). Just because a case

has progressed to the summary judgment stage does not mean that the *prima facie* elements are

irrelevant. *See, e.g.*, *Waggel v. George Wash. Univ.*, 2020 U.S. App. LEXIS 14749, at *19 (D.C.

Cir. May 8, 2020) (granting summary judgment for the defense on claims that "fail[ed] to satisfy

one or more elements of the *prima facie* case" without analyzing the defendant's stated rationale

or the plaintiff's arguments about pretext).[6] The continued need to determine whether an adverse

action exists at the summary judgment stage can be best understood when viewing the

*McDonnell Douglas* burden-shifting standard in the following way: Once the employer asserts a

legitimate rationale for the <u>adverse action</u>, it is the plaintiff's responsibility to show that the

legitimate rationale is mere pretext and that the <u>adverse action</u> was taken for retaliatory reasons.

Therefore, although the Court is not technically assessing whether the plaintiff stated a

successful *prima facie* case, the Court is still looking to see if the plaintiff can establish a link

between the <u>adverse action</u> and a retaliatory animus. *See Lathram v. Snow*, 336 F.3d 1085, 1088

(D.C. Cir. 2003) (explaining that a plaintiff cannot "survive summary judgment" without

showing "that a reasonable jury could conclude from all of the evidence that the adverse

[action]" was taken for an unlawful purpose) (emphasis added). It follows that without a legally

cognizable adverse action, there can be no link between an adverse action and a retaliatory

animus, and without that link, there can be no successful retaliation claim at all.

In the retaliation context, an adverse action must "produce[] an injury or harm" that is

material in nature. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)

(finding that a thirty-seven day unpaid suspension was an adverse action even though the

plaintiff ultimately received backpay, as she was initially left unsure if she would receive pay for

---

[6] Although the claims dismissed due to a lack of any adverse action were brought under the Family and Medical
Leave Act, the same *McDonnell Douglas* burden-shifting standard still applied.

that time).[7] An adverse action must do more than merely "make[] an employee unhappy." *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013). The distinction between "*material adversity*" and "trivial harms" is critical to this analysis. *Burlington Northern*, 548 U.S. at 64, 67-68. If the injury is not severe enough to "dissuade[] a reasonable worker from" engaging in protected activity based on an objective standard, then it is not an adverse action for the purposes of a retaliation claim. *Id.* at 57. The Court must examine the specific facts of the particular case at issue, as "[c]ontext matters" when assessing adverse actions. *Id.* at 69.

A change of duties constituting an adverse action generally needs to involve a materially significant change. A reassignment or denial of assignment that does not affect an employee's pay and benefits may still constitute an adverse employment action if it negatively affects future opportunities. *Id.*; *see also Brewer v. Holder*, 20 F. Supp. 3d 4, 21-22 (D.D.C. 2013) (finding that one of the plaintiffs failed to establish an adverse action in part because she could not show that the denial of an assignment that she wanted or her "assignment to insignificant tasks" adversely affected her future advancement). If a change in assignment results in "significantly different and diminished" supervisory and programmatic responsibilities, that could still constitute an adverse employment action. *Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007) (finding that the plaintiff's reassignment could constitute an adverse action because he went from supervising 960 employees to fewer than 10); *see also Brewer*, 20 F. Supp. 3d at 21-22 (finding that a change in one of the plaintiff's duties was an adverse action specifically because there was "a genuine dispute of fact as to whether Brewer's supervisory duties decreased as a result of his reassignment" to a new location). Generally, however, a change in responsibilities does not

---

[7] The standard for an adverse action alleged as part of a retaliation claim is broader than the standard for an adverse action alleged as part of a discrimination claim. *See Burlington Northern*, 548 U.S. at 63 (explaining that adverse retaliatory actions—unlike adverse discriminatory actions—can occur outside of the workplace).

constitute an adverse action if there is not a materially "substantive change or . . . increase in . . . workload." *Taylor v. Small*, 350 F.3d 1286, 1296 (D.C. Cir. 2003) (making this finding specifically in the retaliation context).[8]

Although Ms. Kline may be unhappy about no longer having regulatory assignments, that does not make OPM's decision an adverse action. She was not demoted to a lower position or even reassigned to a different position, and she was not forced to change locations. It also does not appear that her ultimate workload was significantly reduced, nor does it appear that her workload was increased so as to be more burdensome. She has not alleged a diminishment of any supervisory duties, and her pay was not lowered. Aside from the fact that she wanted to continue doing regulatory work, Ms. Kline has failed to present any evidence that this decision had any negative impacts whatsoever. Additionally, she has not alleged that this change could have any negative effects on her future employment prospects or on any other aspect of her life. Interestingly, Ms. Kline's opposition fails to make any mention of defendant's argument that Count II does not allege an adverse action. *See generally* ECF No. 35.

Although the issue of whether "a particular reassignment of duties constitutes an adverse action . . . is generally a jury question," *Czekalski*, 475 F.3d at 365, that is not true when the plaintiff has failed to establish that a reasonable juror could find in her favor on this issue. There is simply no evidence that a reasonable employee in her position would have refrained from engaging in protected activity based on this allegation. Because mere dissatisfaction with a change in the type of assignments available is insufficient to satisfy the adverse action requirement as a matter of law, Ms. Kline has failed to establish that there was any adverse

---

[8] Although this decision was issued prior to *Burlington Northern*, the Supreme Court specified in *Burlington Northern* that the D.C. Circuit had already been applying the correct standard when assessing adverse actions in the retaliation context. 548 U.S. at 67-68.

action that could serve as the basis for her retaliation claim. Therefore, even when drawing all inferences in Ms. Kline's favor, no reasonable juror could find a link between an adverse action and a retaliatory animus, meaning that summary judgment for the defense on Count II is warranted.

## III. THE COURT WILL GRANT SUMMARY JUDGMENT FOR THE DEFENSE ON COUNT THREE.

Defendant is entitled to summary judgment on Count III, which alleges that defendant retaliated against Ms. Kline by: (1) issuing her a counseling memorandum; (2) issuing her an official reprimand; and (3) issuing her a paid suspension. The Court, however, finds that none of these alleged actions are legally adverse, and Ms. Kline thus has no adverse action on which to base her retaliation claim. If there is no adverse action, then no reasonable juror could find a link between an adverse action and a retaliatory animus, meaning that her claim fails as a matter of law. Therefore, the Court must grant defendant's summary judgment motion with respect to Count III. As previously explained in this Memorandum Opinion, even though this case has reached the summary judgment stage, it is still proper for the Court to analyze whether Ms. Kline has alleged an adverse action. The same standard for an adverse action that the Court detailed in its analysis of Count II also applies to Count III.

### A. The Counseling Memorandum is Not an Adverse Action.

Courts in this jurisdiction have generally held that counseling memoranda are not adverse actions. *See, e.g.*, *Stewart*, 275 F.3d at 1136 (explaining that the D.C. Circuit has always held that even in the retaliation context, "formal criticisms or reprimands, without additional disciplinary action such as a change in grade, salary, or other benefits, do not constitute adverse

employment actions")[9]; *Baloch*, 550 F.3d at 1199 (finding that a counseling memorandum without abusive language is not an adverse action); *Bowe-Connor v. Shinseki*, 845 F. Supp. 2d 77, 92 (D.D.C. 2012) ("As a general matter, in the D.C. Circuit, counseling letters and other forms of disciplinary actions do not constitute adverse employment actions, even under the more permissive standard for an 'adverse action' for retaliation claims."). Essentially, if a counseling memorandum is not abusive and is not used as a basis for a subsequent adverse action, then that counseling memorandum is typically not an adverse action. *See, e.g.*, *Jimenez v. McAleen*, 395 F. Supp. 3d 22, 39 (D.D.C. 2019) (finding that a non-abusive counseling email did not constitute an adverse action even under the lower standard for a retaliatory adverse action); *Webster v. DOE*, 2020 U.S. Dist. LEXIS 41543, at *17-20 (D.D.C. March 10, 2020) (explaining that a counseling memorandum with no direct impact on the employer's decisions about future pay or promotions was not an adverse action for the purposes of discrimination or retaliation).

The counseling memorandum in this case did not contain abusive language, nor was it used as a basis for lowering Ms. Kline's pay, demoting her, etc. She has not alleged that this counseling memorandum will have any negative effects on her employment or on any other aspect of her life. As a matter of law, an objective, reasonable worker would not refrain from engaging in protected activity based on this reprimand. Therefore, the counseling memorandum in this case does not constitute an adverse action even in the retaliation context, meaning that Ms. Kline has failed to establish a legally cognizable basis for her retaliation claim. Even when drawing all reasonable inferences in Ms. Kline's favor, no reasonable jury could find that this specific counseling memorandum constitutes an adverse action, and thus no reasonable jury

---

[9] Although this decision was issued prior to *Burlington Northern*, the Supreme Court specified in *Burlington Northern* that the D.C. Circuit had already been applying the correct standard when assessing adverse actions in the retaliation context. 548 U.S. at 67-68.

could find a link between an adverse action and a retaliatory animus. Even upon consideration of her arguments that this memorandum was issued for retaliatory reasons, her claim cannot succeed as a matter of law, and the Court must grant defendant's summary judgment motion with respect to this issue.

### B. The Official Reprimand is Not an Adverse Action.

Courts in this jurisdiction have generally held that reprimands are not adverse actions, even in the retaliation context. *See, e.g.*, *Stewart*, 275 F.3d at 1136 (explaining that the D.C. Circuit has always held that even in the retaliation context, "formal criticisms or reprimands, without additional disciplinary action such as a change in grade, salary, or other benefits, do not constitute adverse employment actions")[10]; *Bowe-Connor*, 845 F. Supp. 2d at 92 ("As a general matter, in the D.C. Circuit, counseling letters and other forms of disciplinary actions do not constitute adverse employment actions, even under the more permissive standard for an 'adverse action' for retaliation claims."). If a letter of reprimand contains no abusive language and is not used as a basis for another adverse action, then the letter of reprimand is usually not adverse. *See, e.g.*, *Baloch*, 550 F.3d at 1199 (finding that a letter of reprimand without abusive language is not an adverse action even in the retaliation context); *Walker v. District of Columbia*, 279 F. Supp. 3d 246, 267-68 (D.D.C. 2017) (finding that a written reprimand containing no abusive language and having no effect on the employee's pay, grade, or working conditions was not an adverse action for the purposes of a retaliation claim).

The official reprimand in this case did not contain abusive language, nor was it used as a basis for lowering her pay, demoting her, etc. As a matter of law, no objectively reasonable

---

[10] Although this decision was issued prior to *Burlington Northern*, the Supreme Court specified in *Burlington Northern* that the D.C. Circuit had already been applying the correct standard when assessing adverse actions in the retaliation context. 548 U.S. at 67-68.

worker would refrain from engaging in protected activity based on this reprimand. Therefore, the

official reprimand in this case does not constitute an adverse action, meaning that Ms. Kline has

failed to establish a basis for her retaliation claim. Even when drawing all inferences in Ms.

Kline's favor, no reasonable jury could find a link between an adverse action and a retaliatory

animus, as no adverse action exists. Therefore, even upon consideration of her arguments that

this official reprimand was issued for retaliatory reasons, her claim cannot succeed as a matter of

law, and the Court must grant defendant's summary judgment motion with respect to this issue.

### C. The Suspension is Not an Adverse Action.

Although the D.C. Circuit does not appear to have spoken directly on this issue, the D.C.

District Court as well as courts in other jurisdictions have found that brief, paid suspensions are

not adverse actions, even under the lower retaliation standard. For example, in *Harper v. Potter*,

the D.C. District Court found that in the retaliation context, a seven-day suspension that "did not

involve actual time away from work or any loss of pay" was not materially adverse, and thus the

plaintiff had not established a *prima facie* case of retaliation. 456 F. Supp. 2d 25, 26 (D.D.C.

2006). Similarly, the Western District of Michigan found that even in light of the Supreme

Court's ruling in *Burlington Northern*, a two-day suspension with pay did not constitute an

adverse employment action for retaliation purposes. *Helmi v. Solvay Pharms., Inc.*, 2006 U.S.

Dist. LEXIS 84562, at *35-36, 38-39, 45-46 (W.D. Mich. Nov. 21, 2006); *see also*

*Teklehaimanot v. Park Ctr., Inc.*, 804 F. Supp. 2d 886, 904-05 (N.D. Ind. 2011) (finding that a

paid suspension pending an investigation was not an adverse action for the purposes of

retaliation); *Solomon v. Phila. Newspapers, Inc.*, 2008 U.S. Dist. LEXIS 41978, at *50-51

(E.D.P.A. May 21, 2008) (finding that even in light of *Burlington Northern*, a "nine-day

suspension with full pay and benefits . . . would not have dissuaded a reasonable employee from

making or supporting a charge of discrimination" and thus the suspension was not an adverse action for retaliation purposes). Essentially, if a suspension is brief, does not result in lost wages, and is not used to justify subsequent adverse actions, then the suspension is generally not an adverse action, as a reasonable worker would not refrain from engaging in protected activity based on that type of disciplinary action.

The Court finds that Ms. Kline's suspension is not an adverse action. It is uncertain whether Ms. Kline was suspended for one or two days—defendant claims that she was only suspended for one day (Saturday, May 30, 2009), while Ms. Kline argues that the wording of the suspension order was unclear and thus the suspension may have extended through Sunday, May 31, 2009. Because the Court must make all inferences in the plaintiff's favor, the Court will assume that this was a two-day suspension. Either way, however, the suspension was still extremely brief, and she was not kept out of the office on workday. Not only was this suspension brief, but because she was a Monday-Friday employee, she admits that her pay was not decreased, *see* ECF No. 44, meaning that she was deprived of neither the ultimate nor the immediate use of her wages. Furthermore, Ms. Kline has not alleged that this suspension was the basis for any subsequent adverse action.[11]

Essentially, a reasonable employee would not refrain from engaging in protected activity based on a one-time, one-weekend suspension that did not result in loss of wages. Therefore, the

---

[11] Ms. Kline asserts in her response to an Order of the Court for supplemental information that this suspension negatively impacted her 2009 performance appraisal, which in turn prevented her from earning a monetary bonus. ECF No. 44. This argument does not change the Court's determination for two reasons. First, Ms. Kline does not argue that the suspension was the direct cause of her inability to receive a bonus—rather, she makes an attenuated argument that the suspension impacted her performance appraisal (which is not an adverse action), and then that performance appraisal impacted the decision not to award her a bonus. Second, and more importantly, this is the first time that Ms. Kline has raised the issue about a bonus, which she admits in her response. Not a single filing prior to ECF No. 44 even used the word "bonus," making any argument that the suspension was in some way connected to a bonus decision irrelevant. Ms. Kline suggests reopening discovery so that she can present evidence about this bonus, but full discovery was already completed in 2017, and the Court will not reopen discovery simply because Ms. Kline would now like to add a new claim that she had ample opportunity to present before.

Court finds that the suspension in this case was not materially adverse, meaning that Ms. Kline

has failed to establish a retaliation claim as a matter of law. Even when drawing all inferences in

Ms. Kline's favor, no reasonable juror could find that this specific suspension constitutes an

adverse action, and thus no reasonable juror could find a link between an adverse action and a

retaliatory animus. Therefore, even upon consideration of her arguments that this suspension was

issued for retaliatory reasons, her claim cannot succeed, and the Court must grant defendant's

summary judgment motion with respect to this issue.


## IV. TO THE EXTENT THAT MS. KLINE HAS STATED A CLAIM FOR HOSTILE WORK ENVIRONMENT, THE COURT WILL GRANT SUMMARY JUDGMENT FOR THE DEFENSE. [12]

To the extent that Ms. Kline has actually alleged a hostile work environment claim,

defendant is entitled to summary judgment. Ms. Kline states in her opposition:

> In light of the repeated unwarranted disciplinary actions against her, and the issuance of a poor performance appraisal that the EEOC found was due to retaliation, Kline submits OPM created a hostile work environment. Kline further submits that because the EEOC found during the same relevant time frame that OPM retaliated against her for engaging in protected activity . . . a reasonable jury could also find that OPM created a hostile work environment by issuing unwarranted disciplinary actions in an attempt to lay a foundation for terminating Kline's employment.

ECF No. 35 at 20. For the reasons previously explained in this Memorandum Opinion, however,

the Court has determined that defendant is entitled to summary judgment on Ms. Kline's other

claims. Ms. Kline's entire hostile work environment claim thus rests on the EEOC's previous

---

[12] Although Ms. Kline uses "Hostile Work Environment" as a heading in the "Factual Allegations" section of her Complaint, no specific Count actually alleges a hostile work environment claim. *See generally* ECF No. 1. This means that there is technically no hostile work environment claim for the Court to analyze; however, unlike with the nonexistent claim described in Footnote 3, Ms. Kline did at least use this phrase as a heading in her Complaint. Therefore, even though the Court does not believe that Ms. Kline properly stated a hostile work environment claim, the Court will still analyze the issue, as it is easily disposed of.

finding that OPM retaliated against her in the past. Quite simply, this is insufficient to prove a hostile work environment claim. The standard for a hostile work environment claim is extremely high, meaning that "a few isolated incidents of offensive conduct do not amount to actionable harassment." *Stewart*, 275 F.3d at 1134. A plaintiff can only succeed on this type of claim if she proves that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris*, 510 U.S. at 21 (quoting *Meritor Sav. Bank, FSB*, 477 U.S. at 65, 67). The EEOC's determination that the OPM retaliated against her in the past is plainly insufficient to meet this standard.

Furthermore, even if the underlying allegations from Ms. Kline's other claims were considered, courts in this jurisdiction have been clear that the actions Ms. Kline complains of do not amount to creation of a hostile work environment. For example, in *Bonnette v. Shinseki*, the Court rejected a hostile work environment claim based on a written reprimand. *See* 907 F. Supp. 2d 54, 81 (D.D.C. 2012). In *Holmes-Martin v. Sebelius*, the Court rejected a hostile work environment claim based on public criticism, reduced responsibilities, exclusion from meetings, and unrealistic deadlines. 693 F. Supp. 2d 141, 165 (D.D.C. 2010). In *Nurriddin*, the Court rejected a hostile work environment claim based on the plaintiff's supervisor making disparaging remarks about his EEO complaints and attempting to end his eligibility for workers' compensation. 674 F. Supp. 2d at 93-95. If these allegations were found to be insufficient, then Ms. Kline's allegations must also be insufficient, even when all reasonable inferences are made in her favor. Therefore, because no reasonable juror could find that Ms. Kline was subjected to a hostile work environment as a matter of law, the Court must dismiss any such allegation. In

making this determination, the Court is not weighing the evidence—rather, the Court has found

that there is no evidence to be weighed.

## CONCLUSION

Based on the foregoing, the Court will **GRANT** defendant's motion for summary

judgment (ECF No. 34).

It will be **ORDERED** that this case is **DISMISSED** with prejudice.

A separate Order accompanies this Memorandum Opinion.


Date: May 23, 2020                                             /s/ Royce C. Lamberth
                                                                    Royce C. Lamberth
                                                                    United States District Court Judge